UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DORIAN SWAIN, | |
| Plaintiff, | No. 1:23-CV-03980 |
| v. | Judge Edmond E. Chang |
| COOK COUNTY SHERIFF'S DEPARTMENT, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Dorian Swain was a police officer with the Cook County Sheriff's Department, but he now brings this employment-discrimination suit against the Department, Sheriff Thomas Dart, several other Sheriff's Department employees, the Cook County Merit Board and its members and Cook County. R. 42, Second Am. Compl.[1] All Defendants move to dismiss, arguing that certain defendants cannot be liable under the claims that Swain has presented and that Swain otherwise fails to adequately state a claim for relief. *See* R. 48, Sheriff's Department Defs.' Mot.; R. 55, Merit Board Defs.' Mot. For the reasons explained below, the Board Defendants' motion is granted in full and the Sheriff Defendants' motion is granted in large part. The only remaining claims are the Title VII disparate treatment and Title VII retaliation claim against the Sheriff's Department.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has federal-question jurisdiction over this case under 28 U.S.C. § 1331.

# I. Background

In deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). After almost a decade of solid performance as a correctional officer, Dorian Swain was promoted to a police officer. Second Am. Compl. ¶¶ 20–22. Around a year after he was promoted, several supervisors accused Swain of violating several Sheriff's Department policies and procedures, allegedly out of the blue. *Id.* ¶¶ 20–22, 24–27. So, a few months later, Swain filed an internal complaint against those officers, alleging harassment and racial discrimination (Swain is a Black man). *Id.* ¶¶ 5, 28.

Things allegedly got worse for Swain after he filed the internal complaint. Not only did he lose his police-officer responsibilities, his job duties also substantially changed overall. Second Am. Compl. ¶ 28. As a police officer, he was assigned to respond to emergency and non-emergency calls for assistance and to patrol assigned areas for crime. *Id.* ¶ 23. After he filed the complaint, however, Swain was relegated to collecting recyclables in the warehouse and completing clerical work. *Id.* ¶¶ 29, 31–33. Swain noticed that other employees like him who had behaved similarly but did not report their supervisors did not have their job responsibilities changed. *Id.* ¶¶ 39–40. A key difference between Swain and those employees is that Swain is Black and the other employees are not. *Id.* ¶ 39.

A few months after Swain was assigned to complete clerical work, Swain sued the Defendants in federal court, at first only naming the Cook County Sheriff's

2

Department, alleging that the Department discriminated against him on the basis of his race and retaliated against him for filing an internal complaint about the discrimination. *Id.* ¶ 34; R. 2, Am. Compl. Then, two months later, Swain learned that his employment was terminated for allegedly violating Cook County Department of Corrections policies. Second Am. Compl. ¶ 35. Swain received the notice of termination from the Cook County Sheriff's Merit Board, an administrative agency tasked to investigate the enforcement of the Sheriff's Department's rules. 55 ILCS 5/3-7002, 7015; Second Am. Compl. ¶ 36.

In the meantime, Swain filed two charges with the Equal Employment Opportunity Commission—one in April 2022 and the other in December 2023. Sheriff Defs.' Mot. at 3–4. The first charge alleged that Swain was discriminated and retaliated against based on his sex and age. *Id.* at 3. It also explained that he was "subjected to different terms and conditions of employment, including but not limited to discipline and reassignment." *Id.* The second charge again described the discrimination and retaliation that Swain had experienced and then added that he was fired for engaging in a protected activity. *Id.* at 3–4. The second charge also explained that white employees who engaged in similar misconduct to him but who did not engage in protected activity were not fired. *Id.* Swain received a Notice of Right to Sue letter on this charge in July 2024. *Id.* at 4.

After receiving his Right to Sue letter, Swain amended the complaint, tacking on a claim for that he was fired for engaging in a protected activity, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, a claim that he

3

was retaliated against in violation of the First Amendment, and a claim that he was denied equal protection under the Fourteenth Amendment. Second Am. Compl. ¶¶ 48–59. This time, Swain named several defendants, including the Cook County Sheriff's Department, the sheriff, Thomas Dart in his individual and official capacity, officers John Webb, Cameron Pon,[2] and Theodore Stajura in their individual capacities, the Cook County Sheriff's Merit Board and its members in their individual capacities, and Cook County. Second Am. Compl. ¶¶ 6–19.

The Sheriff's Department, as well as officers Webb, Pon, Stajura plus Cook County, together move to dismiss the complaint. Sheriff Defs.' Mot. In sum, the Sheriff Defendants argue that the claims against Webb, Pon, and Stajura should be dismissed because they were not named in Swain's EEOC charge, so the claims against them are unexhausted. *Id.* at 1–2. The Sheriff Defendants also argue that the remaining claims should be dismissed because they are too vague and conclusory to state a claim for relief. *Id.* at 2. The Merit Board and its individual members also move to dismiss, seeking to join the arguments in the Sheriff Defendants' motion. Board Defs.' Mot. at 2. The Board Defendants also assert that its members are entitled to absolute immunity, the Board itself is protected by immunity under the Illinois Tort Immunity Act, 745 ILCS 10/2-101, *et seq.*, and (alternatively) the allegations fail to state a claim for relief. *Id.* at 2–7.

---

[2]The Sheriff Defendants explain that Lieutenant Cameron Pon, a former investigator, conducted part of Swain's investigation, but the complaint mistakenly named "Ernst" who was not involved in Swain's investigation. Sheriff Defs.' Mot. at 2 n.2.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

### A. Title VII Race Discrimination

Swain brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, against all Defendants. He alleges that the Defendants discriminated against him by reassigning him from police work to clerical work, and for firing him after he reported the alleged discrimination. Second Am. Compl. ¶¶ 45–50. The Board Defendants move to dismiss the Title VII claims against it and the individual Board members because neither the Merit Board nor its members are Swain's "employer" for purposes of Title VII. R. 56-1, Board Def. Supp. Br. at 2–4. And the Sheriff Defendants ask the Court to dismiss the claims against Webb, Pon, and Stajura because those officers are not named in either EEOC charge that Swain filed. Sheriff Defs.' Mot. at 6–7. Both arguments are correct.

First, the Title VII claims against the Board Defendants must be dismissed because only Swain's "employer" can be liable under Title VII, and the Merit Board is not his employer under Title VII. *See Hearne v. Bd. of Educ. of City of Chicago*, 185 F.3d 770, 777 (7th Cir. 1999); *Bless v. Cook Cnty. Sheriff's Off.*, 2015 WL 890370, at *6 (N.D. Ill. Feb. 27, 2015) (dismissing First Amendment retaliation claims brought under 42 U.S.C. § 1983 against a merit board because the plaintiff did not sue his employer). As the Board Defendants argue, it is the Sheriff's Department—not the Board—that is Swain's employer for Title VII purposes. The Board is an *adjudicatory* body rather than an employer. *See Bless*, 2015 WL 890370, at *6 (citing *Averhart v. Sheriff of Cook Cnty.*, 752 F.3d 1104, 1106 (7th Cir. 2014) (per curiam) (explaining

that the plaintiff failed to "explain[] how the Merit Board, as an adjudicatory board and not his employer, could be liable for his employment deprivation). So the Board and its members cannot be held liable for any Title VII claim because they are not Swain's "employer."

Second, the Title VII claims against Webb, Pon, Stajura, and Sheriff Dart (in his individual capacity) must be dismissed for an independent reason: these Defendants were not named in either of Swain's EEOC charges. Before bringing a Title VII claim in federal court, a plaintiff is required to first exhaust administrative remedies by filing a charge with the EEOC and receiving a right to sue letter. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). After receiving the notice, a plaintiff "may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (cleaned up). For a claim to be "like or reasonably related" to the EEOC charge, the charge and complaint "must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis in original). Here, Swain's EEOC charge did not name those individual defendants, so there is an additional reason to dismiss the Title VII claims against them.

7

### 1. Title VII Disparate Treatment (Count 1)

What remains are the Title VII claims against the Sheriff's Department.[4] Turning to the merits, to successfully bring a Title VII disparate treatment claim based on race, a plaintiff must plausibly allege that he "(1) is a member of a protected class, (2) he was subjected to an adverse employment act, and (3) there is a link between those two." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 38 F. Supp. 3d 925, 931 (N.D. Ill. 2014). At the pleading stage for employment-discrimination cases, generally speaking, a plaintiff need not support the third element with detailed factual allegations so long as he alleges that the first two elements are linked by racial animus. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). That is, the plaintiff must at least allege that the Defendants selected "a particular course of action at least in part because of its adverse effects upon an identifiable group." *Alston v. City of Madison*, 853 F.3d 901, 907 (7th Cir. 2017) (cleaned up).

At the pleading stage, not much is needed in an employment-discrimination case of this kind. It is true that the Second Amended Complaint is not nearly as clear as it could be, especially because it typically lumps all of the Defendants together. But Swain does allege that he "performed his job well," and yet he was stripped of his

---

[4]Swain appears to mistakenly believe that the Cook County Sheriff's Department is a division of Cook County, R. 60, Pl.'s Rep. at 14–15, when instead it is, as a matter of law, a separate municipality. With that formal legal separateness, there is no substantive allegation leveled against Cook County, so to the extent Swain wanted to assert a claim against the County itself, none exists. Cook County is dismissed from the case for now. If Swain wants to add an indemnification claim against Cook County, then he may propose to do so by seeking leave to amend (again) the operative complaint.

police powers and his job duties changes substantially starting in February 2022. Second Am. Compl. ¶¶ 21, 29. Instead of performing sworn-officer duties, Swain was relegated to "work in the warehouse to collect recyclables," and then in January 2023, he was assigned to do "clerical work." *Id.* ¶¶ 31–32. He ultimately was fired for violating Department of Corrections policies, but other Caucasian employees who engaged in comparably serious violations were not fired. *Id.* ¶ 39. It is true that discovery might show otherwise, that is, that there are no comparators as alleged by Swain, or that there was a legitimate, non-discriminatory reason for the reassignment and the firing. But the case is at the pleading stage. So, although the allegations and their connections to one another are not as clear as they could have been, given the notice pleading for employment-discrimination cases, the race-discrimination claim may move forward as to the Sheriff's Department.

### 2. Title VII Retaliation

Swain also alleges that the Sheriff's Department violated Title VII by firing him in retaliation for filing an internal complaint about the discrimination that he had experienced. Second Am. Compl. ¶¶ 28, 35–36, 38–44. To plausibly allege a Title VII retaliation claim, Swain must assert facts suggesting that "(1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a link between the two." *Cole*, 38 F. Supp. 3d at 931. Here again, given the expansiveness of the notice-pleading standard in employment cases, the retaliation claim may move forward against the Sheriff's Department. Swain first connects the removal of police powers—which happened on February 16, 2022—to the filing of the internal

9

complaint of discrimination on December 30, 2021, which is relatively close in time. Second Am. Compl. ¶¶ 28–29. Then he connects the filing of the Amended Complaint in this case, on August 15, 2023, with his firing on October 12, 2023, *id.* ¶¶ 34–35, again relatively close in time to one another. Again, discovery might very well undermine the claim, but it is sufficiently pleaded.

### B. Immunity of Board Members and of the Board

Next, Swain brings two constitutional claims arising from the firing. Second Am. Compl. ¶¶ 51–59. First, he alleges that the Defendants violated his First Amendment rights by firing him after he filed an internal complaint and an Amended Complaint in federal court. *Id.* ¶¶ 51–54. Swain also alleges that the Defendants violated his right to Equal Protection by firing him based on his race. *Id.* ¶¶ 55–59. The Board Defendants argue that the Board and its individual officers enjoy quasi-judicial immunity because their duties are judicial in nature. Board Defs.' Mot. at 4–5. The Board Defendants also argue that because the Board is a public entity and its members are public employees, the Board and its Members are also shielded by the Illinois Tort Immunity Act, 745 ILCS 10/2-101. *Id.* at 5–7. As discussed next, the Board's individual members do enjoy absolute immunity, but the Board is not shielded from suit by the Illinois Tort Immunity Act.

The Board's individual members are entitled to absolute immunity. "Absolute immunity is available to members of quasi-judicial adjudicatory bodies when they perform duties that are functionally comparable to those of a judicial officer, regardless of the identity of the actor." *Capra v. Cook Cnty. Bd. of Rev.*, 733 F.3d 705, 709

(7th Cir. 2013) (cleaned up). In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court established six considerations for analyzing whether quasi-judicial immunity applies. Those are "(1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for damages actions as a means for controlling unconstitutional conduct; (3) the insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctability of error on appeal." *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (citing *Butz*, 438 U.S. at 512)).

Those factors counsel in favor of conferring quasi-judicial immunity for Board members. The Board's hearing process is very much like a judicial proceeding—officers are entitled to notice and an opportunity to be heard and present evidence. 55 ILCS 5/3-7012. And the Board's function of reviewing disciplinary actions deserves insulation from harassment or intimidation because it is "inherently controversial and likely to result in disappointed parties and, unless checked, a multitude of lawsuits," like the very lawsuit before this Court. *Heyde*, 633 F.3d at 519 (analyzing the *Butz* factors). Finally, Illinois law provides the opportunity to appeal from unfavorable Board decisions. *See id.* So the individual Board members are immune from this lawsuit.

The Board, as an entity, however, does not enjoy quasi-judicial immunity. It is well established that municipal entities—entities like the Board—are not entitled to absolute immunity. *E.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 701 (1978) ("[M]unicipal bodies sued under § 1983 cannot be entitled to an absolute immunity,

11

lets our decision that such bodies are subject to suit under § 1983 be drained of meaning." (cleaned up)); *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006) ("[U]nits of government are not entitled to immunity in suits under § 1983" in part because immunities are "personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability"); *Capra*, 733 F.3d at 711–12 (denying absolute immunity for the Cook County Board of Review). The same principle applies here, so the Board is not entitled to quasi-judicial immunity.

The Board also asserts that the Illinois Tort Immunity Act, 745 ILCS 10/1-101, shields it from suit in this case. Merit Board Defs.' Mot. at 5–7. The Merit Board is mistaken. That statute was enacted to "protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1(a). But the Tort Immunity Act only protects local public entities from lawsuits arising under *state* law. Indeed, federal law is supreme to state laws, *see Gibbons v. Ogden*, 22 U.S. 1, 3 (1824), so a state law cannot protect a defendant from a federal claim, like a § 1983 lawsuit. *Thomas ex rel. Smith v. Cook Cnty. Sheriff*, 401 F. Supp. 2d 867, 875 (N.D. Ill. 2005) (citing *Anderson v. Vill. of Forest Park*, 606 N.E.2d 205, 211 (Ill. App. Ct. 1992)). So the Board is not entitled to any kind of immunity against the § 1983 claims. As explained next, however, the federal constitutional claims are dismissed in any event.

### C. First Amendment Retaliation

Section § 1983 provides, in relevant part, that "[e]very person who … subjects … any citizen of the United States or other person within the jurisdiction thereof

to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ….." 42 U.S.C. § 1983. In *Monell*, the Supreme Court held that local governmental entities are "persons" under Section 1983. *Monell*, 436 U.S. at 688–89. To establish municipal liability, Swain must allege that "an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999) (cleaned up). To establish liability against a municipal actor in their individual capacity, Swain must adequately allege "personal involvement in the alleged constitutional deprivation …." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). In other words, Swain must sufficiently plead that "the conduct causing the constitutional deprivation occur[ed] at [the individual's] direction or with his knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (cleaned up). But, in most cases, if there is no underlying constitutional violation, then there is no municipal liability. *Horton v. Pobecky*, 883 F.3d 941, 964 (7th Cir. 2018).

Here, Swain has failed to adequately allege a First Amendment retaliation claim. To survive the motion to dismiss the First Amendment retaliation claim, Swain must adequately allege that "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in [Defendants'] actions." *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). But beyond that, the First Amendment right to free speech for public

13

employees is subject to an important limit. "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "For a public employee's speech to be protected under the First Amendment, the employee must show that (1) he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (cleaned up). But if a public employee reports misconduct as directed by official policy, either to a supervisor or an external oversight body, then the employee speaks *pursuant to his official duties*—and his speech is not protected. *Tamayo v. Blagoevich*, 526 F.3d 1074, 1091 (7th Cir. 2008).

Here, Swain engaged in unprotected speech. He filed an internal complaint with the Sheriff's Department reporting the alleged discrimination that he experienced at his job at the hands of his supervisors. Second Am. Compl. ¶¶ 10–11. Based on these allegations, then, Swain was speaking *pursuant to his official duties*, so there is no viable First Amendment retaliation claim. So the First Amendment retaliation claim is dismissed as to all of the Defendants.

### D. Equal Protection

Finally, Swain alleges that the Defendants violated his Fourteenth Amendment equal protection rights by subjecting him to inferior job assignments and firing him on the basis of race. Second Am. Compl. ¶¶ 39–43. On the equal protection claim,

14

however, the facts are not concrete enough to understand *who* did *what*, and what specific *facts* give rise to a plausible inference of race discrimination on the part of particular actors and municipalities. It is one thing to rely on Title VII's pleading-stage leniency in employment-discrimination cases when Title VII renders employers—as entities—liable for the decisions of their agents. But Section 1983 requires (a) personal conduct to hold individual defendants liable and (b) some specific basis for municipal liability under the familiar standards of *Monell*. None of that is adequately pleaded by Swain as to any Defendant. Of course there is no heightened pleading standard under Section 1983. *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993). But only well-pleaded *factual* allegations receive the presumption of truth. *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011). For the equal-protection claim, the operative complaint falls short. But the dismissal is without prejudice to proposing an amended pleading that adequately states an equal protection claim against specific defendants.

## IV. Conclusion

The Sheriff Defendants' motion to dismiss, R. 48, is granted in large part and denied in part. The only remaining claims are the Title VII disparate treatment and Title VII retaliation claim against the Sheriff's Department. No claims have been asserted against Cook County itself. The Merit Board Defendants' motion to dismiss, R. 55, is granted in full. The parties shall confer on a proposed discovery schedule and file a joint status report by October 10, 2025.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 26, 2025